# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SARAH COPELAND, individually and on behalf of THE ESTATE OF ISAAC SIDNEY OEHLERS, *et al.*, | § § § § | |
| Plaintiffs | § § | |
| v. | § § | CASE NO. 4:22-CV-03572 |
| TGS ASA and TGS-NOPEC GEOPHYSICAL CO., | § § § | |
| Defendants. | § | |

# DEFENDANTS' MOTION TO DISMISS
# UNDER FEDERAL RULE 12 AND FOR *FORUM NON CONVENIENS*

# TABLE OF CONTENTS

**Page**

**BACKGROUND** ............................................................................................. 3

I.    The parties............................................................................................. 3

II.    Plaintiffs' alleged injuries stem from the Beirut Explosion, which the Petition acknowledges Defendants had nothing to do with. ................................. 4

III.    Plaintiffs' effort to tie Defendants to the Beirut Explosion rest entirely on actions of Spectrum and other non-parties, which occurred more than six years before the accident. .................................................................... 5

IV.    Plaintiffs' causes of action. ................................................................... 7

V.    Plaintiffs allege no link between Defendants and the wrongdoing that is the basis for their claims, other than Defendants' post-hoc corporate affiliation with non-party Spectrum. ........................................................ 8

**NATURE AND STAGE OF PROCEEDING** ................................................... 9

**STATEMENT OF ISSUES AND STANDARD OF REVIEW** ........................ 9

**SUMMARY OF THE ARGUMENT** ............................................................ 10

**ARGUMENTS AND AUTHORITIES** .......................................................... 11

I.    Plaintiffs' failure to plead specific facts in support of its conclusory "alter ego" assertion requires dismissal of all claims. ................................... 11

II.    Plaintiffs' claims should also be dismissed under Rule 12 because they fail to plead essential elements of cognizable claims. ................................ 13

    A.    Plaintiffs fail to state a claim for strict liability because the theory of strict liability alleged has been rejected by Texas courts. ................. 14

    B.    Plaintiffs fail to state a claim for negligence because the alleged acts of Spectrum and its agents did not proximately cause the Plaintiffs' alleged injuries. ...................................................... 15

    C.    Plaintiffs' "survival action" fails for the same reasons their strict liability and negligence claims fail. ........................................ 18

    D.    Plaintiffs' conclusory allegations of violations of Lebanese law are likewise facially inadequate. ........................................................ 19

III.    Alternatively, The Court Should Dismiss This Case For *Forum Non Conveniens* In Favor of the Courts of Lebanon or the United Kingdom. ............. 20

    A.    Lebanon and the United Kingdom each provide a proper alternate forum for this dispute. ......................................................... 20

    B.    The private and public interest factors strongly favor dismissal. ............ 21

**CONCLUSION** ............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akerblom v. Ezra Holdings Ltd.*,
    848 F. Supp. 2d 673 (S.D. Tex. 2012) ...................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................9, 18, 19

*Austin Nursing Ctr., Inc. v. Lovato*,
    171 S.W.3d 845 (Tex. 2005)................................................................................19

*Bell v. Campbell*,
    434 S.W.2d 117 (Tex. 1968)................................................................................15

*Bloomfield v. Kingdom of Saudi Arabia*,
    No. 4:19-CV-04213, 2020 WL 10762223 (S.D. Tex. May 22, 2020)....................12

*Cluster for Innovations, Inc. v. Palazuelos Hnos S.A. de C.V.*,
    No. 4:07-CV-00842, 2008 WL 11388764 (S.D. Tex. Mar. 7, 2008) ...............10, 20

*Del Castillo v. PMI Holdings N. Am. Inc.*,
    No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ......................12

*Dickson Marine Inc. v. Panalpina, Inc.*,
    179 F.3d 311 (5th Cir. 1999) ...............................................................................20

*Doddy v. Oxy USA, Inc.*,
    101 F.3d 448 (5th Cir. 1996) ...............................................................................14

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
    907 S.W.2d 472 (Tex. 1995)................................................................................15

*Freilich v. Green Energy Res., Inc.*,
    297 F.R.D. 277 (W.D. Tex. 2014) .......................................................................12

*Fugett v. DCP Midstream, L.P.*,
    No. 2:14-CV-00111-J, 2015 WL 510965 (N.D. Tex. Feb. 6, 2015)......................14

*IHS Cedars Treatment Ctr. v. Mason*,
    143 S.W.3d 794 (Tex. 2004)...........................................................................15, 16

*Jeha v. Arabian Am. Oil Co.*,
    751 F. Supp. 122 (S.D. Tex. 1990), *aff'd sub nom. Jeha v. Arabian Am. Oil*,
    936 F.2d 569 (5th Cir. 1991) ...........................................................................10, 21

*Johannes v. Ace Transportation, Inc.*,
    346 S.W.3d 640, 641 (Tex. App.—El Paso 2009, no pet.)................................17, 18

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ..................................................................................9

*Lear Siegler, Inc. v. Perez*,
   819 S.W.2d 470 (Tex. 1991) ...............................................................................16

*Lorenzo v. Qualcomm Inc.*,
   No. 3:08-CV-02124, 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ................15, 18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................22

*Prather v. Brandt*,
   981 S.W.2d 801 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ...................14

*Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*,
   896 S.W.2d 156 (Tex. 1995) ...............................................................................15

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ................................................................................9

*Riojas v. Lone Star Gas Co.*,
   637 S.W.2d 956, 958 (Tex. App.—Forth Worth 1982, writ ref'd n.r.e.) ...........16, 17

*Russell v. Ingersoll-Rand Co.*,
   841 S.W.2d 343 (Tex. 1992) ...............................................................................19

*Saqui v. Pride Cent. America, LLC*,
   595 F.3d 206 (5th Cir. 2010) ..............................................................................24

*Simcox v. McDermott Intern., Inc.*,
   152 F.R.D. 689 (S.D. Tex. 1994) .....................................................................20, 21

*Stefanets v. M/V Kalamas*,
   No. 4:19-CV-4352, 2021 WL 8945670 (S.D. Tex. May 21, 2021) ......................20

*Vassallo v. Nederl-Amerik Stoomv Maats Holland*,
   344 S.W.2d 421 (Tex. 1961) ...............................................................................14

**Rules and Statutes**

28 U.S.C. § 1369.......................................................................................................9

Tex. Civ. Prac. & Rem. Code § 71.002 .....................................................................7

Defendants TGS ASA ("TGS") and TGS-NOPEC Geophysical Co. ("TGS-NOPEC") file this Motion to Dismiss Under Federal Rule 12 and for *Forum Non Conveniens*, and would respectfully show as follows:

## INTRODUCTION

At its core, this case presents tort claims alleging personal injury and property damages arising out of an industrial accident that occurred in Beirut, Lebanon, in August 2020 (the "Beirut Explosion"). The events at issue, while unquestionably tragic, have no connection to either of the named Defendants. Nor do they have anything to do with the State of Texas. Plaintiffs' claims should therefore be dismissed for failure to state a claim or, in the alternative, on *forum non conveniens* grounds.

What is most striking about Plaintiffs' Original Petition ("Petition") is what it fails to allege. The Petition includes pages and pages about alleged corruption in the Lebanese political regime—but nothing that ties Defendants to any of those activities (or, for that matter, that ties those activities to their specific causes of action). The Petition summarizes the August 2020 explosion of ammonium nitrate that was being stored in a warehouse at the Port of Beirut, and the welding activity that started a fire that led to the Beirut Explosion—but no facts tying Defendants to the blast or the fire that caused it. And the Petition describes activities from seven years earlier, in which the ammonium nitrate came to be stored at the Port of Beirut warehouse—but again no facts linking those actions to actions of Defendants. As it turns out, the only allegation in Plaintiffs' entire 60-page Petition that purports to connect Defendants to the causes of action alleged is the fact that, in 2019, Defendant TGS acquired an altogether different entity, known at the time as Spectrum ASA, and Spectrum is alleged tangentially to have been involved in the 2013 (pre-acquisition) decisions of an unaffiliated non-party to contract with a ship carrying ammonium

1

nitrate, which Lebanese officials later ordered offloaded and stored in a warehouse at the Port of Beirut.

Even as to non-party Spectrum—an entity based in the United Kingdom that Plaintiffs acknowledge in the Petition still exists, albeit under the alleged new name of TGS AS, but Plaintiffs strangely elected not to sue—Plaintiffs' claims are remarkably tenuous.  Under Plaintiffs' theory, Spectrum contracted with a Jordanian company known as Geophysical Services Company ("GSC Jordan") to provide it with seismic equipment for exploring for oil and natural gas.  When GSC Jordan sought a vessel to transport its seismic equipment back to Jordan, it contracted with the *M/V Rhosus*, a ship Plaintiffs allege was in poor condition and not suitable for the job, and which was already carrying a large amount of ammonium nitrate on board.  When the *Rhosus* arrived in Beirut to pick up the seismic equipment, it was structurally unable to handle the additional cargo, the ship was declared unseaworthy, and Lebanese government officials ordered the ammonium nitrate to be unloaded at the warehouse at the Port of Beirut.  There it remained, until the explosion 6 years later.

Plaintiffs, then, posit this chain of causal inferences to ascribe liability to Defendants:

- Defendant TGS acquired Spectrum in 2019, which (disregarding corporate formalities and hornbook law) made Spectrum the alter ego of both TGS and corporate affiliate TGS-NOPEC;

- Spectrum negligently contracted with GSC Jordan, which should be ascribed to Defendants based on an alter ego theory as a result of the acquisition;

- GSC Jordan negligently contracted to use the *Rhosus* for shipping its seismic equipment, which should be ascribed to Spectrum, which should then be ascribed to Defendants; and

- In the absence of contracting to use the *Rhosus*, the ammonium-nitrate would never have been in Beirut, so it never would have been able to explode when the fire occurred in the warehouse, so Plaintiffs never would have been injured.

132891948

In essence, Plaintiffs' injuries were caused by the explosion; which was caused by the fire; which was caused by the welders; which only happened because the ammonium-nitrate was in the warehouse; which was ordered by Lebanese authorities six years earlier in 2014; which resulted because GSC Jordan arranged for transportation on the *Rhosus* in 2013; which occurred only because Spectrum engaged GSC Jordan for seismic work prior to that. This is a chain of causal inferences that even Mrs. O'Leary would be loath to assert without blushing.

Moreover, even if Plaintiffs could somehow overcome the legal hurdles that preclude assertions of claims on such an attenuated causal basis, the Petition suffers from another obvious threshold defect. This case does not belong in a U.S. court. All of the relevant events happened in Lebanon, and the entity that is the lynchpin of Plaintiffs' vicarious liability theory that connects Defendants to these claims is based in the United Kingdom. In the unlikely event these claims are to proceed, they should only do so in either a Lebanese or British forum.

## BACKGROUND[1]

### I.      The parties.

The Plaintiffs in this case consist of nine individuals who allege they suffered personal injury and property damages arising out the Beirut Explosion, either in their own right or as representatives of the estates of individuals who were killed in the accident. All of the Plaintiffs were in Beirut at the time of the accident, and at least five still reside there. Petition ¶¶ 10-17. None of the Plaintiffs resides in Texas, and there are no allegations that any of the Plaintiffs have *ever* resided or had any connection to Texas generally or the Southern District of Texas specifically.

---

[1] Because this Motion is brought under Rules 12(b)(6) and 12(c), the factual allegations contained in the Petition are accepted as true for the purposes of this Motion only. *See infra* at 9-10. References, quotes, and citations to the Petition are not an admission that the alleged facts are true.

132891948

Only two of the Plaintiffs are alleged to currently live anywhere in the United States: one who resides in California, and another living in New Jersey. *Id.* ¶¶ 13, 17.

The two Defendants named in this litigation are not alleged to have committed a single wrongful act cited in the Petition as a basis for liability. Defendant TGS ASA is a Norwegian company, while Defendant TGS-NOPEC Geophysical Co. is a Delaware corporation with its principal place of business in Houston, Texas. *Id.* ¶¶ 18, 20. Plaintiffs seek to impose liability on Defendants not for any acts of their own, but rather based on the acts of a non-party based in the United Kingdom, which was known at the time as Spectrum ASA. *Id.* ¶¶ 23-25. Several years after the acts alleged in the Petition, Spectrum was acquired by TGS ASA and remains an existing subsidiary headquartered in London to this day, which Plaintiffs allege is operating under the name TGS AS. *Id.* ¶ 198. (For ease of reference, this entity will be referred to herein as "Spectrum.") The only fact alleged in the Petition to support liability for the Defendants based on the acts of Spectrum is the fact that they are corporate affiliates. *Id.* ¶¶ 205-09.

## II. Plaintiffs' alleged injuries stem from the Beirut Explosion, which the Petition acknowledges Defendants had nothing to do with.

Plaintiffs' lawsuit seeks damages based on personal injuries and property damage they suffered as a result of a massive industrial accident occurring on August 4, 2020 at the Port of Beirut, which the Petition characterizes as "one of the largest non-nuclear explosions in world history." *Id.* ¶ 1. The "catalyst" for the explosion is alleged to have been a shipment of ammonium nitrate, *id.*, which had been stored in a warehouse at the Port of Beirut for at least six years prior to the explosion. *Id.* ¶ 38. Each Plaintiff, or the estate on whose behalf the Plaintiff sues, alleges that he or she was injured in the explosion in 2020. *See id.* ¶¶ 10-17, 46-81.

132891948

According to the Petition, the explosion followed "a fire that had erupted in the hangar where [the ammonium nitrate] was stored." *Id.* ¶ 40. The fire apparently originated as a result of some welding that was being done nearby. *Id.* ¶ 42.

The Petition does not allege any involvement of Defendants, of Spectrum, or of any entity or individual affiliated with Defendants in the events of August 2020 that resulted in the Beirut Explosion. Plaintiffs allege no connection between Defendants and the three welders whose work appears to have precipitated the fire that caused the explosion. Plaintiffs allege no ownership or relationship of any kind between Defendants and the warehouse that stored the ammonium nitrate that exploded. And Plaintiffs allege no ownership or relationship of any kind between Defendants and the ammonium nitrate itself, either at the time of the explosion or at any time before. Moreover, according to the Petition, it was Lebanese officials who ordered the ammonium nitrate offloaded and stored in the warehouse, where it remained for six years before the Beirut Explosion. *Id.* ¶ 38.

### III. Plaintiffs' effort to tie Defendants to the Beirut Explosion rest entirely on actions of Spectrum and other non-parties, which occurred more than six years before the accident.

The basis for Plaintiffs' claims against Defendants revolve around the alleged activities in Lebanon in the decade prior to the Beirut Explosion by Spectrum and a contractor it used. Spectrum was a seismic data company incorporated in the United Kingdom, and was "a major provider of … seismic data and Seismic Imaging services to the global oil and gas industry, including in the 'East Mediterranean.'" *Id.* ¶¶ 24, 88. Spectrum operated in Lebanon from 2000 to 2013 or 2014. *Id.*

The Petition alleges that Spectrum's activities in Lebanon were conducted in part under a 2012 contract between Spectrum and the Lebanese government ("2012 Contract"). *Id.* ¶¶ 25, 27.

5

Under the 2012 Contract, Spectrum was to conduct both on-shore and off-shore seismic surveys in Lebanon. *Id.* ¶ 94. In order to conduct these surveys, Spectrum contracted with another non-party, Geophysical Services Company ("GSC Jordan"), a Jordanian company which owned the surveying equipment used in the seismic surveys related to the 2012 Contract. *Id.* ¶ 109-110.

At the conclusion of the surveying work, GSC Jordan needed to ship its seismic equipment back to Jordan. *Id.* ¶ 127. In order to do so, an agent of GSC Jordan contracted on behalf of GSC Jordan to have the ship known as the *M/V Rhosus* pick up the seismic equipment at the Port of Beirut. *Id.* ¶¶ 127-30. The *Rhosus*, according to the Petition, was in poor shape and was unseaworthy. *Id.* ¶¶ 132-33, 140-43. Although Plaintiffs make no allegation that Spectrum had any knowledge of the condition of the *Rhosus* or even any involvement in the selection of that vessel by GSC Jordan, the Petition nonetheless makes the general assertion that the deficiencies in the *Rhosus* "must have been known or should have been known to Spectrum and [GSC Jordan]." *Id.* ¶ 140.

The *Rhosus* arrived in the Port of Beirut in November 2013. *Id.* ¶ 164. Onboard was "2,750 tonnes of ammonium nitrate," the ownership of which is unknown.[2] *Id.* ¶¶ 145, 149. While attempting to load the seismic equipment, the *Rhosus'* hatches "began to buckle," and the ship "was found not seaworthy."[3] *Id.* ¶ 146. Because the *Rhosus* could not leave Beirut, Lebanese officials ordered the ammonium nitrate brought ashore in 2014 and stored in a warehouse at the Port of Beirut. *Id.* at ¶ 38.

Neither of the Defendants in this case are alleged by Plaintiffs to have had any involvement in Spectrum's seismic activity; its decision to contract with GSC Jordan; the decision by GSC

---

[2] Plaintiffs do not allege that Spectrum or GSC Jordan owned the ammonium nitrate.

[3] The ship was also impounded on December 20, 2013. *Id.*

132891948

Jordan to arrange to ship its equipment on the *Rhosus*; the fact that the *Rhosus* was carrying ammonium nitrate; or the decision to store the ammonium nitrate in a warehouse at the Port of Beirut.

Six years later, following the fire at the Port of Beirut, the ammonium nitrate exploded.

## IV.    Plaintiffs' causes of action.

Based on these alleged facts, Plaintiffs assert seven tort-based causes of action.  The first two claims are for strict liability based on the theory that "Spectrum's and/or its agents' actions constituted abnormally dangerous and/or ultrahazardous conduct," *id.* ¶¶ 231, 243, resulting in personal injury and property damage.[4] *See id.* ¶¶ 223-45.

Counts 3 and 4 allege the same injuries, based on a negligence theory.  *See id.* ¶¶ 246-68. In particular, Plaintiffs contend that Spectrum breached a duty to Plaintiffs "in selecting GSC Jordan" as its contractor and that GSC Jordan breached a duty to Plaintiffs "in selecting the Rhosus as the ship to transport heavy seismic equipment from Beirut, Lebanon, to Jordan."  *Id.* ¶¶ 248, 250, 260, 262.

In Counts 5 and 6, Plaintiffs assert causes of action under Lebanese law.  Count 5 asserts that "Spectrum and its agents in Lebanon failed to comply with provisions of the Environmental Protection Laws."  *Id.* ¶ 271.  Count 6 asserts that "Spectrum and its agents in Lebanon failed to properly handle the ammonium nitrate aboard the Rhosus," *id.* ¶ 277, which it alleges violates Lebanese penal law.  *Id.* ¶¶ 276, 279.

Lastly, Count 7 alleges a survival claim based on damages suffered by "deceased relatives sustained as a result [of the] Beirut Blast."  *Id.* ¶ 282.

---

[4] Count 1 is a claim for Wrongful Death apparently brought under the Texas Wrongful Death Act. *See* Tex. Civ. Prac. & Rem. Code § 71.002. Count 2 is a claim for personal and property damage brought under a theory of strict liability.

132891948

Plaintiffs also assert gross negligence and seek exemplary damages. *Id.* ¶¶ 284-88.

V.   **Plaintiffs allege no link between Defendants and the wrongdoing that is the basis for their claims, other than Defendants' post-hoc corporate affiliation with non-party Spectrum.**

The allegations in the Petition make clear that Defendants TGS and TGS-NOPEC had no involvement whatsoever in the events of 2013-2014 surrounding the selection of GSC Jordan as a contractor or the selection of the *Rhosus* as the ship to transport GSC Jordan's seismic equipment. Likewise, the Petition acknowledges that Defendants had no involvement whatsoever in the events of 2020 leading to the fire in the warehouse or the subsequent explosion.

The one and only allegation in the Petition linking Defendants to the underlying facts in this case is the assertion that Defendant TGS acquired Spectrum in 2019 (5-6 years after the events in question) and assumed its liabilities as a result. *Id.* ¶ 198. Under the "merger plan," Spectrum was "merged into a wholly owned subsidiary of TGS." *Id.* This new wholly owned subsidiary, TGS NewCo,[5] acquired "all assets, rights, and obligations of Spectrum." *Id.* at ¶ 200. Spectrum was not named as a defendant in this case, although it still exists (under its new name) and operates from its London headquarters. Instead, Plaintiffs' claim that Spectrum is an agent and/or alter ego of its new corporate parent, TGS. *Id.* ¶¶ 206-07.  Plaintiffs' likewise claim that Spectrum is an agent and/or alter ego of its new corporate affiliate, TGS-NOPEC. *Id.* ¶ 209.  Thus, the only allegations related to ***the actual Defendants*** in this case are conclusory statements aimed at trying to make them vicariously liable for the acts of Spectrum.

---

[5] In the Petition, Plaintiffs allege that TGS NewCo changed its name to TGS AS. *Id.* ¶ 206.

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed this case against TGS and TGS-NOPEC on July 11, 2022, in the 11th Judicial District Court of Harris County, Texas, under the case style *Copland, et al. v. TGS ASA, et al.*, No. 2022-41445.  TGS-NOPEC answered on August 5, 2022.  TGS asserts that it was not properly served, but reached a Rule 11 agreement with Plaintiffs by which the parties acknowledged service as of September 23, 2022.

TGS timely removed the proceeding to this Court on October 16, 2022, based on the multiparty, multiforum jurisdictional provision found at 28 U.S.C. § 1369.  *See* Doc. 1.  As of the date of this filing, Plaintiffs have not filed a motion to remand.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

This Motion presents the following issues:

1.   Whether Plaintiffs have properly stated claims upon which relief could be granted for strict liability and negligence and whether those claims should be dismissed.

2.   Whether this Court should dismiss this proceeding under the doctrine of *forum non conveniens*.

Dismissal under Rule 12(b)(6) is "appropriate when a… complaint… fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To survive a motion to dismiss, Plaintiffs must present the Court with a complaint containing "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quotation omitted).  The standard is the same for dismissal on the pleadings, when a party has answered, as is the case with Defendant TGS-NOPEC.  *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (standard for a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion).

Dismissal under the doctrine of *forum non conveniens* is proper when it is more appropriate for the tribunal of another jurisdiction to hear a case. *Jeha v. Arabian Am. Oil Co.*, 751 F. Supp. 122, 124 (S.D. Tex. 1990) (citations omitted), *aff'd sub nom. Jeha v. Arabian Am. Oil*, 936 F.2d 569 (5th Cir. 1991) (table op.). The court must determine whether there is an adequate alternate forum for the dispute. *Cluster for Innovations, Inc. v. Palazuelos Hnos S.A. de C.V.*, 4:07-CV-00842, 2008 WL 11388764, at *1 (S.D. Tex. Mar. 7, 2008). If there is an adequate alternate forum, then the court considers various private and public interest factors to determine whether to dismiss the case in favor of the alternate forum. *See id.*

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims should be dismissed for failure to state a claim for which relief can be granted under Federal Rules 12(b)(6) and 12(c). At the outset, Plaintiffs' allegation that Defendants are "alter egos" of Spectrum is purely conclusory and as a result no claim can be stated against Defendants for the alleged acts of non-party Spectrum. Moreover, even if the alter ego theory were sufficiently pleaded, the Petition still fails to state viable causes of action. Plaintiffs' strict liability claims rest on the oft-criticized theory of abnormally dangerous or ultrahazardous activities. But that theory has been repeatedly rejected by Texas courts and the Fifth Circuit. Moreover, the causal chain that Plaintiffs rely on for their negligence causes of action fails to meet the legal standards for pleading plausible allegations of proximate cause. Indeed, the theory of causation advanced in this case is well beyond the realm of what has ever been endorsed in any other case.

In addition, dismissal is also warranted on *forum non conveniens* grounds.  Both Lebanon and the United Kingdom are more appropriate forums for resolution of Plaintiffs' claims.  And when the well-known public and private interest factors are weighed, they clearly support litigation in either of those forums over litigation in Texas.  There is no evidence in Texas, no witnesses in Texas, and no Plaintiffs in Texas.  Virtually all the witnesses and evidence are located in Lebanon and the United Kingdom, with perhaps some additional evidence in surrounding European or Middle Eastern countries.  The lack of any connection to Texas make this the archetypal case for dismissal on *forum non conveniens* grounds.

For all these reasons, Defendants' motion to dismiss should be granted.

## ARGUMENTS AND AUTHORITIES

**I.  Plaintiffs' failure to plead specific facts in support of its conclusory "alter ego" assertion requires dismissal of all claims.**

As noted above, there are no allegations whatsoever that either TGS or TGS-NOPEC had any involvement whatsoever in any of the acts that are asserted as the basis of liability.  Indeed, all of the alleged wrongful acts were committed by Spectrum or third-parties who contracted with Spectrum in 2013 or before—but the Petition acknowledges that Defendants had ***no relationship whatsoever*** with Spectrum until a corporate transaction that occurred in 2019.  Petition ¶ 198.  Thus, notwithstanding a 60-page pleading, the sole allegations that links either of the Defendants to the causes of action alleged are:

- "On information and belief, TGS AS [f/k/a Spectrum] is an agent and/or alter ego of [Defendant] TGS ASA."  *Id.* ¶ 207.

- "Likewise, [Defendant] TGS-NOPEC Geophysical Co., [Defendant] TGS ASA's primary subsidiary, is an agent and/or alter ego of [Defendant] TGS ASA."  *Id.* ¶ 209.

11

There are no facts alleged supporting this allegation, other than the fact of corporate ownership—

i.e., that, following the acquisition, Defendant TGS ASA owns 100% of TGS AS (f/k/a Spectrum),

and that Defendant TGS-NOPEC is "wholly owned" by TGS ASA.  *See id.* ¶¶ 206, 209.

Courts in this district and indeed around the country have repeatedly dismissed claims

based on these exact conclusory allegations of "alter ego" status.  As this court recently explained,

"[t]he Fifth Circuit has provided practitioners with a laundry list of factors that must be considered

in determining the status of a subsidiary as the alter ego of its parent."  *Bloomfield v. Kingdom of*

*Saudi Arabia*, No. 4:19-CV-04213, 2020 WL 10762223, at *3 (S.D. Tex. May 22, 2020) (listing

twelve different factors relevant to alter ego analysis under Fifth Circuit precedent).  The court's

conclusion that the plaintiff's pleading should be dismissed under Rule 12 applies equally to

Plaintiffs' pleading here:

> Here, Plaintiff's Complaint is void of facts to support ***any*** of the alter ego factors.
> Plaintiff only alleges that Motiva is a subsidiary of Saudi Aramco, and Saudi
> Aramco is owned by Saudi Arabia.  ***Pleading the mere existence of a parent-***
> ***subsidiary relationship hardly establishes an alter ego relationship.***  Thus,
> Plaintiff fails to provide sufficient factual matter, accepted as true, to state a claim
> for relief that is plausible on its face.

*Id.* at *4 (emphasis added).

Other courts have held likewise.  *See, e.g.*, *Akerblom v. Ezra Holdings Ltd.*, 848 F. Supp.

2d 673, 680 (S.D. Tex. 2012) (granting dismissal for failure to state a claim because "Akerblom's

legal conclusion that Emas Subsea is the alter-ego of EHL is not entitled to the same weight as his

factual assertions"); *Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277, 282 (W.D. Tex. 2014)

(denying leave to amend as futile where complaint "merely recites conclusory allegations" of alter

ego because "[w]ithout additional factual support, such conclusory allegations are insufficient

under *Twombly* and *Iqbal*") (citing cases); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-

132891948

03435, 2016 WL 3745953, at *12 (S.D. Tex. July 13, 2016) (rejecting personal jurisdiction allegations based on contacts of alleged alter ego, explaining "Plaintiffs' pleadings are not sufficient to establish alter ego. . . because Plaintiffs provide nothing more than bald assertions and conclusory allegations of an alter ego relationship") (citing cases).

This overwhelming authority establishes that the mere incantation of the phrase "alter ego" is insufficient as a matter of law to meet the threshold pleading requirements of the Federal Rules. As a result, all of Plaintiffs' claims should be dismissed.

## II.   Plaintiffs' claims should also be dismissed under Rule 12 because they fail to plead essential elements of cognizable claims.

Plaintiffs bring four state law claims alleging either strict liability or negligence, along with two Lebanese law claims and one vicarious liability claim. The claims are based on the alleged actions or omissions of Spectrum, which TGS acquired in 2019. Petition ¶ 198. The strict liability claims fail because such claims are not recognized in Texas. The negligence claims fail because, even when the Petition is taken as true, Plaintiffs' claims fail to establish that Spectrum or its agent's acts proximately caused any of the Plaintiffs injuries. Because the underlying claims against Spectrum fail, the vicarious liability claims also fail.  Finally, the Lebanese claims fail because Plaintiffs have not pleaded any factual basis for such claims, relying instead on purely conclusory assertions of unspecified legal violations of the type that the Supreme Court has deemed legally inadequate.

132891948

### A. Plaintiffs fail to state a claim for strict liability because the theory of strict liability alleged has been rejected by Texas courts.

Plaintiffs' first and second claims are brought under a flawed theory of strict liability.[6] Because Texas does not recognize a cause of action based on strict liability for abnormally dangerous or ultrahazardous activities, the strict liability claims should be dismissed.

Texas courts have explicitly rejected the very theory Plaintiffs rely on—in Texas there is no strict liability related to abnormally dangerous or ultrahazardous materials. *E.g.*, *Doddy v. Oxy USA, Inc*., 101 F.3d 448, 462 & n.13 (5th Cir. 1996) (collecting authority) ("We determine, then, that the Texas Supreme Court has clearly rejected strict liability for abnormally dangerous activities."); *Fugett v. DCP Midstream, L.P.*, No. 2:14-CV-00111-J, 2015 WL 510965, at *5 (N.D. Tex. Feb. 6, 2015) ("Texas courts do not recognize a strict liability cause of action based on abnormally dangerous activity") (citations omitted); *Prather v. Brandt*, 981 S.W.2d 801, 804 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("Texas does not recognize a cause of action of strict liability for 'ultrahazardous' or 'abnormally dangerous' activities.") (collecting authority).

Plaintiffs' theory of liability is that Spectrum or its agents "created a high degree of risk of harm" when they selected the *Rhosus* to transport seismic equipment from Lebanon to Jordan. Petition ¶¶ 224, 236. Because the *Rhosus* was transporting ammonium nitrate, Plaintiffs allege that the duty fell on Spectrum and its agents to eliminate the risk of the explosives when they attempted and failed to load the *Rhosus* with seismic equipment. *Id.* ¶¶ 225-27, 237-39. These claims, based

---

[6] Claims 1 and 2 are based on the same theory of liability. The first count is brought as a wrongful death action while the second is brought individually on behalf of each of the Plaintiffs. Because the underlying theory of liability has been rejected by Texas courts, it does not matter whether the claim is brought as a wrongful death claim or individually, it should still be dismissed. *See Vassallo v. Nederl-Amerik Stoomv Maats Holland*, 344 S.W.2d 421, 424 (Tex. 1961) ("[U]nder the express provisions of the Wrongful Death Act, the plaintiff is permitted to assert any basis for recovery that the decedent could have asserted if he were alive, and no other; and that the defendant can assert any defense to that cause of action that it could have asserted if the decedent had survived, and no other.").

on the dangerous or hazardous nature of explosives, are not recognized in Texas.[7] Plaintiffs' first and second claims fail to state a legally cognizable claim and should be dismissed.

**B.     Plaintiffs fail to state a claim for negligence because the alleged acts of Spectrum and its agents did not proximately cause the Plaintiffs' alleged injuries.**

Plaintiffs' third and fourth claims allege that Spectrum or its agents were negligent and caused personal and property damage to the Plaintiffs.[8] These claims should be dismissed because the alleged acts of Spectrum and its agents were not a substantial factor in bringing about the Beirut Explosion.[9]

"The components of proximate cause are cause in fact and foreseeability." *Doe v. Boys Clubs of Greater Dallas, Inc*., 907 S.W.2d 472, 477 (Tex. 1995) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). Importantly, cause in fact requires a plaintiff to do more than "furnish a condition which made the injury possible," rather the "act or omission must be a "substantial factor in bringing about the injury,' without which the harm would not have occurred." *Id.* (first quoting *Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd*., 896 S.W.2d 156, 160 (Tex. 1995); and then citing *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex. 1968)); *see also IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004) (quoting *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)) ("In order to be the proximate cause of another's harm,

---

[7] Even if the claims were recognized, they should still be dismissed because as set out in the following section, the alleged acts of Spectrum and its subcontractor were not the legal cause of the Plaintiffs' injuries.

[8] Like the strict liability claims, the negligence claims include one for wrongful death (Count 3) and one for personal injury and property damage (Count 4).  Petition ¶¶ 246-268.

[9] Dismissal on the pleadings is appropriately granted when, as here, the pleaded "facts" are insufficient to support the elements of proximate cause as a matter of law. *E.g.*, *Lorenzo v. Qualcomm Inc*., No. 3:08-CV-02124, 2009 WL 2448375, at *4 (S.D. Cal. Aug. 10, 2009) ("The additional allegations that Qualcomm's conduct was the 'proximate cause' of Plaintiff's injury constitute bare legal conclusions, which are insufficient to withstand a motion to dismiss.").

it is not enough that the harm would not have occurred had the actor not been negligent. This is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm.").

The "attenuation of the causal connection between conduct and [injury]" cuts off tort liability: "Where the initial act of negligence was not the active and efficient cause of plaintiffs' injuries, but merely created the condition by which the second act of negligence could occur, the resulting harm is too attenuated from the defendants' conduct to constitute the cause in fact of plaintiffs' injuries." *Id.*

Even if Plaintiffs' allegations are taken as true, neither Spectrum nor its agents were a "substantial factor" in causing the explosion.  For example, in *Lear Siegler, Inc. v. Perez*, a flashing sign mounted to the back of a truck malfunctioned, causing the sign operator to stop on the highway to fix the sign where he was hit by a car and died.  819 S.W.2d 470, 471 (Tex. 1991). Suit was brought against the sign manufacturer who argued that there was no causal link between the malfunction of the sign and the car hitting the decedent. The Court agreed, holding that the sign manufacturer was, as a matter of law, not the legal cause of the accident because the conduct of the manufacturer was too attenuated from the negligence that actually caused the accident (the driver falling asleep) to be the legal cause. *Id.* at 472.

This same reasoning was employed in *Riojas v. Lone Star Gas Co.*, in which plaintiffs alleged that their gas service was terminated and when "Fort Worth … experienced a sudden drop in temperature" the plaintiffs brought a charcoal fire indoors to keep warm, thereafter suffering from carbon monoxide poisoning. 637 S.W.2d 956, 958 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e).  The plaintiffs' claims were rejected by the court which held that their negligence in bringing

the charcoal bucket indoors "was a cause sufficiently efficient to have broken the causal link between Lone Star's withdrawal of the regular heat source and the plaintiffs' injuries." *Id.* at 959.

Similarly, in *Johannes v. Ace Transportation, Inc*., an employee of Ace Transportation negligently damaged an electrical pole which fell and damaged a nearby traffic signal. 346 S.W.3d 640, 641 (Tex. App.—El Paso 2009, no pet.). The plaintiff was shocked while repairing the traffic signal and sued Ace for negligence. Because the electrical company had failed to ground the power line, the court affirmed summary judgment for Ace, holding that "Ace Transportation's negligence was too attenuated from [the plaintiff's] injuries to constitute a legal cause of the incident." *Id.* at 644. Rather, "the original negligence merely created the condition by which the second act of negligence [failure to ground the line] could occur." *Id.* at 643.

As these cases make clear, Plaintiffs' allegations, even when taken as true, establish that neither Spectrum nor its subcontractors were the legal cause of the injuries. Here, Plaintiffs claim that Spectrum selected GSC Jordan in a manner that did not meet the standard of care in the international community and "other applicable law." Petition ¶¶ 247-48. In turn, GSC Jordan was allegedly negligent in chartering the *Rhosus* because it was "riddled with deficiencies and already fully loaded with ammonium nitrate" when it arrived in Beirut.  *Id.* ¶¶ 249-50. Spectrum and its subcontractor's conduct allegedly occurred in approximately 2013.  *E.g.*, *id.* ¶¶ 1, 125. The ammonium nitrate was moved, not by Spectrum or GSC Jordan, but by order of Lebanese officials, to a warehouse at the Port of Beirut in 2014. *Id.* ¶ 38.

Six years later, the explosion occurred on August 4, 2020, allegedly because the ammonium nitrate that had been onboard the *Rhosus* exploded. *Id.* ¶ 190. The cause of the explosion, according to the Petition, was a fire.  Just hours before the explosion, workers were allegedly welding in the Port near where the ammonium nitrate was stored. *Id.* ¶ 42. "A fire started about 50 meters from

where the workers had been welding." *Id*. The fire spread, apparently causing the ammonium nitrate to detonate. *Id.* ¶ 41 ("The explosive grade ammonium nitrate exploded on August 4, 2020, at around 6:00 p.m. following a fire that had erupted in the hangar where it was stored.").

Like *Ace Transportation*, *Riojas*, and *Lear Siegler*, at most, the alleged actions of Defendants merely furnished a condition that made subsequent negligence possible. Thus, even assuming that Spectrum's selection of the subcontractor was negligent, and even assuming that the selection of the *Rhosus* was negligent, the alleged acts were not a "substantial factor" in causing the injuries as required by Texas law. Rather, the alleged negligence of the unknown workers in starting the fire—like the electrical company's failure to ground the power line in *Ace Transportation*, the plaintiff's bringing a charcoal fire indoors in *Riojas*, and the driver in *Lear Siegler*—was the legal cause of the explosion. Plaintiffs' allegations establish that *at most*, Spectrum and its subcontractor's "allegedly negligent conduct had come to a rest" and "[a]nother act, by a third party, although it was put in motion by the original negligence, was the efficient cause of the injuries." *Ace Transportation*, 346 S.W.3d at 643.

Plaintiffs' own allegations foreclose the possibility that Spectrum or its subcontractor were the legal cause of Plaintiffs' injuries.[10] The Court should dismiss the negligence claims.

### C.   Plaintiffs' "survival action" fails for the same reasons their strict liability and negligence claims fail.

Plaintiffs also plead a Survival Action as its Seventh Claim for Relief.  *See* Petition ¶¶ 281-83.  This claim, however, is entirely derivative of liability on Counts 1-4.  Plaintiffs' survival action, like their wrongful death action, fails for the same reason the underlying claims fail. "The survival

---

[10] While Plaintiffs allege that "Spectrum's negligence was a substantial factor in the explosion," the Court is not required to take the allegation as true because it is a legal conclusion that is not supported by the facts alleged. *See Iqbal*, 556 U.S. at 678; *Lorenzo*, 2009 WL 2448375, at *4.

action … is wholly derivative of the decedent's rights." *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); *see also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005) ("The parties to a survival action seek adjudication of the decedent's own claims for the alleged injuries inflicted upon her by the defendant."). Because those claims fail to state a claim for the reasons outlined above, Count 7 should also be dismissed.

### D. Plaintiffs' conclusory allegations of violations of Lebanese law are likewise facially inadequate.

Finally, Plaintiffs assert two causes of action ostensibly under Lebanese law, in Counts 5 and 6. But these allegations fall well short of the requirements of *Twombly* and *Iqbal* and amount to mere assertions of violations of unspecified law, with no factual support. In Count 5, Plaintiffs allege that Lebanese environmental law imposes "requirements" on handling certain chemicals, and that "Spectrum and its agents in Lebanon failed to comply with provisions of the Environmental Protection Laws." Petition ¶¶ 270-71. What "requirements" or "provisions" are at issue, or how Spectrum or anyone else failed to comply with them, is completely unspecified. Count 6 is hardly any better. It alleges generically that Lebanese penal law "criminalizes improper handling" of certain chemicals and that "Spectrum and its agents in Lebanon failed to properly handle the ammonium nitrate aboard the Rhosus." *Id.* ¶¶ 276-77. Again, however, Plaintiffs provide no facts in their petition that would indicate what the elements of such a claim might be, much less what facts they allege that would support those unpleaded elements.

As the Supreme Court has made clear, "the pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Plaintiffs' claims under Lebanese law fails this test and should be dismissed.

III.   **Alternatively, The Court Should Dismiss This Case For *Forum Non Conveniens* In Favor of the Courts of Lebanon or the United Kingdom.**

Alternatively, the Court should still dismiss Plaintiff's suit under the *forum non conveniens* doctrine.  Under this doctrine, a court may decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it in favor of an alternative forum.  As noted above, there are two considerations for a *forum non conveniens* motion:  (1) whether there is an adequate alternate forum for the dispute, and (2) whether the balancing of the public and private interest factors favors dismissal in favor of an alternate forum. *See, e.g., Cluster for Innovations*, 2008 WL 11388764, at *1; *see also Dickson Marine Inc. v. Panalpina Inc.*, 179 F.3d 311, 342 (5th Cir. 1999); *Stefanets v. M/V Kalamas*, No. 4:19-CV-4352, 2021 WL 8945670, at *3 (S.D. Tex. May 21, 2021) (citation omitted).

Because the courts of Lebanon and the United Kingdom are both available and adequate for this dispute, and because the public and private interest factors strongly support litigating this dispute in those jurisdictions over the Southern District of Texas, dismissal on *forum non conveniens* grounds should be granted to the extent any of Plaintiffs' claims could conceivably survive dismissal on the pleadings for failure to state a claim.  As this Court has noted in the past, U.S. courts are not required 'to be courthouse or law maker for the world.'" *Simcox v. McDermott Intern., Inc.*, 152 F.R.D. 689, 696 (S.D. Tex. 1994) (citation omitted).

A.   **Lebanon and the United Kingdom each provide a proper alternate forum for this dispute.**

At the outset, there is no doubt that both Lebanon and the United Kingdom provide an adequate and available alternate forum for this case.  The Fifth Circuit has found that "[t]he case law is clear that an alternate forum is adequate and available when the entire case and all of the parties come within the jurisdiction of that forum."  *Dickson Marine*, 179 F.3d at 342

(citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821 (5th Cir. 1986)). Moreover, a forum does not need to duplicate the exact causes of action or procedural benefits that accompany litigation in U.S. courts.  "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Simcox*, 152 F.R.D. at 694 (citations omitted); *see also Jeha v. Arabian Am. Oil Co.*, 751 F. Supp. 122, 125 (S.D. Tex. 1990) ("The foreign forum does not need to reproduce precisely the benefits available in a court in this country.").

Of course, as this Court and numerous other courts have recognized, the courts of the United Kingdom provide an adequate and available forum. *See Simcox*, 152 F.R.D. at 700 ("The Courts of the United Kingdom, Malaysia and Singapore all provide an available, adequate, and appropriate forum for the resolution of this dispute.").

The courts in Lebanon have likewise been recognized to meet the test for an adequate and available forum. *Jeha*, 751 F. Supp. at 125 ("Both Saudi Arabia and Lebanon are available and adequate forums for the resolution of the Jehas' claims.").  Indeed, the availability of remedies in Lebanon for Plaintiffs' claims is apparent from the face of the Petition in this case.  After all, Plaintiffs have asserted claims for damages directly under Lebanese law. *See* Petition at para. 269-80 (Plaintiffs' Fifth and Sixth Claims for Relief, asserted under the Environmental Protection Law of Lebanon and the Penal Code of Lebanon).

### B.      The private and public interest factors strongly favor dismissal.

#### 1.      Private Interest Factors

The private interest factors strongly favor dismissal of this case in favor of conducting any litigation in Lebanon or the United Kingdom.  It is hard to conceive of even a single document or witness related to any of the claims at issue located anywhere in the State of Texas.  And indeed,

132891948

with the exception of two Plaintiffs who currently reside in California or New Jersey, there are no witnesses or documents anywhere in the United States. The overwhelming majority of the relevant evidence is in Lebanon, or in the United Kingdom.

The lack of connection between Plaintiffs' claims and Texas is underlined when one considers the specific private interest factors that the Supreme Court has instructed courts to weigh in evaluating *forum non conveniens* motions. Those factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

The "sources of proof" in this case are virtually all in Lebanon and potentially the United Kingdom. These include the following:

- Documents and witnesses from the Plaintiffs. All of the Plaintiffs and the estates they represent were allegedly injured in Lebanon and lived in Lebanon at the time of the accident. Five of nine Plaintiffs are still in Lebanon as of this fall. *See* Petition ¶¶ 11, 13-16. None live in Texas, either currently or at the time of the accident. *Id.* ¶¶ 10-17. All of the property allegedly damaged is located in Lebanon.

- Documents and witnesses from non-party Spectrum. Spectrum is the only entity affiliated with either Defendant alleged to have had any involvement in any of the acts discussed in the Petition as leading up to the accident. As Plaintiffs acknowledge, it is based in the United Kingdom and has no office in Texas. *Id.* ¶ 23.

- Documents and witnesses from non-party Geophysical Services Center, which is alleged to be a Jordanian company doing business in Lebanon, and which has no connections to Texas. *Id.* ¶ 26.

- Documents and witnesses from the numerous other non-parties involved in the lengthy causal chain Plaintiffs allege, which led up to the accident, and which are predominantly centered in Lebanon.

22

132891948

- Former employees and current employees of all of these entities, none of whom are alleged to be or believed to be in the U.S., and the majority of whom are in Lebanon or the United Kingdom.

These are the key documents and the key witnesses in the case, and none are located in Texas.

The second private interest factor addresses the ability to secure witness testimony for trial, and it is evident that this factor likewise supports dismissal of this case. Securing compulsory process in the U.S. as to these foreign entities—especially with respect to third-parties and former employees—would be practically impossible. Moreover, the cost of transporting all of these alleged witnesses to Houston, Texas would be exorbitant, a cost that would surely be less if this trial were conducted in Lebanon or the United Kingdom. On the other hand, because there are no relevant documents in the U.S., there is little concern about unavailability of sources of proof if the *forum non conveniens* motion is granted.[11]

The third private interest factor addresses the possibility of a view of the premises. To the extent such a view were to ever become necessary, it could only occur in Lebanon.

Finally, there is no credible basis for Plaintiffs to allege any "practical problems" that would make litigation difficult or expensive in Lebanon or the United Kingdom, as opposed to Texas. By any and all conceivable metrics, litigation would be more complex and more problematic in Texas as compared to either Lebanon or the United Kingdom. None of the Plaintiffs are in Texas; most are in Lebanon and all have some ties to Lebanon. The only connection between any party and the facts underlying this suit is that Houston is the alleged headquarters for Defendant TGS NOPEC,

---

[11] As the Petition acknowledges, the named Defendants in this suit had no involvement whatsoever in the underlying actions that are the basis for this lawsuit. Indeed, at the time of the events in question, Spectrum was an independent, separate entity. And Spectrum continues to have its own separate and distinct existence, even after its merger with a subsidiary of Defendant TGS ASA; as alleged in the Petition, Spectrum currently exists under the name TGS AS. Petition ¶ 198. Because the named Defendants had no role in any of the issues in this case, it is not anticipated they will have any relevant documents, in Texas, Lebanon, or anywhere else.

but there are no allegations in the Petition that TGS-NOPEC committed any of the alleged wrongful acts. The only basis alleged for TGS NOPEC's presence in this suit is that its parent company purchased Spectrum at some point after the underlying breaches of duty alleged, such that TGS-NOPEC is now a corporate affiliate of the newly acquired company.

### 2.    Public Interest Factors

The public interest factors also strongly support litigating this dispute in either Lebanon or the United Kingdom. The public interest factors the Supreme Court has stated courts should consider include:

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized controversies decided at home;

(3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

(4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

(5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 213 (5th Cir. 2010).

Everything about this case is centered in Lebanon—that is where the accident occurred; where Plaintiffs suffered their alleged personal injuries; where the property that was allegedly damaged is located. Moreover, Lebanese law is pleaded as the applicable law for several of Plaintiffs' claims.[12] The United Kingdom also has substantial interest in this case, given that it is alleged to be the home of Spectrum. On the other side of the ledger, Texas and its citizens have no interest in this case whatsoever. There are no Texas plaintiffs, and the only Defendant with a

---

[12] And if the Court grants the motion to dismiss the state law claims above, Lebanese law will be the only applicable law.

132891948

Texas connection is not alleged to have had anything to do with the accident in question.  Thus, the public interest factors support dismissal as well.[13]

## CONCLUSION

For all these reasons, Defendants TGS ASA and TGS-NOPEC Geophysical Co. respectfully request that the motion to dismiss be granted.  Defendants request all other relief to which they are justly entitled.

---

[13] The only public interest factor that is not decisively in favor of dismissal is the factor related to relative congestion of the courts.  As between this Court and the United Kingdom, this factor is likely neutral. Statistics about court congestion are not readily available for Lebanon, but even if Lebanese courts were significantly more backed up than U.S. courts, that would not outweigh the significant other public interest factors that overwhelmingly support litigating this case in Lebanon over Texas.

132891948

Dated: October 24, 2022

NORTON ROSE FULBRIGHT US LLP

/s/ Kevin W. Yankowsky

Kevin W. Yankowsky
State Bar No.  00791967
Federal ID No. 18179
kevin.yankowsky@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246

**Attorney-in-charge for Defendants TGS ASA
and TGS-NOPEC Geophysical Co.**

OF COUNSEL

NORTON ROSE FULBRIGHT US LLP
Melanie B. Rother
State Bar No.  24041826
Federal ID No. 39164
melanie.rother@nortonrosefulbright.com
Darryl W. Anderson
State Bar No.  24008694
Federal ID No. 15159
darryl.anderson@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Telephone:     (713) 651-5151
Facsimile:      (713) 651-5246

## CERTIFICATE OF SERVICE

On October 24, 2022, this document was served on all parties in compliance with the Federal Rules of Civil Procedure.

/s/ Kevin W. Yankowsky
Kevin W. Yankowsky

132891948